UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANET D.,

            Plaintiff,

    v.

KILOLO KIJAKAZI, et al.,

            Defendants.

Case No. 22-cv-09080-DMR

**ORDER ON PLAINTIFF'S MOTION TO REMAND**

Re: Dkt. No. 13

Plaintiff Janet D. seeks review of the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* She moves to remand for further proceedings. [Docket No. 13.] The Commissioner opposes. [Docket No. 17.] For the reasons stated below, Plaintiff's motion to remand is denied.

I.     **PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits in March 2013, alleging disability beginning January 30, 2009. *See* Administrative Record ("A.R.") 105, 362. The Social Security Administration ("SSA") denied her application in December 2013. A.R. 13, 126-30.

In April 2018, Plaintiff filed a request for review of the December 2013 denial pursuant to the provisions of the *Hart v. Colvin* class action settlement agreement. A.R. 13-14, 131-36. Under the terms of that settlement, the SSA "agreed to take certain actions on all unfavorable or partially favorable decisions or determinations in which Frank Chen, M.D., performed a consultative examination (CE) between January 1, 2007, and December 31, 2013." Plaintiff had been examined by Dr. Chen during the applicable time period. A.R. 13. The SSA then re-

United States District Court
Northern District of California

adjudicated Plaintiff's claim for the period March 14, 2013 to December 3, 2013 without considering Dr. Chen's CE.  It denied Plaintiff's claim on re-adjudication on January 7, 2019.  A.R. 13-14, 137-40.

An Administrative Law Judge ("ALJ") held a telephonic hearing in May 2021 at which two medical experts and a vocational expert testified.  A.R. 30-76.  The ALJ issued an unfavorable decision on December 28, 2021.  A.R. 10-29 (ALJ Decision).  The ALJ determined that Plaintiff has the following severe impairments: bilateral knee degenerative joint disease and obesity.  A.R. 19.  The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [D]uring the readjudicated period of March 14, 2013, to December 3, 2013, the date of the prior decision, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she could stand about six hours of an eight-hour workday; sit for six to seven hours of an eight-hour workday; never climb ladders, ropes or scaffolding; occasionally climb ramps or stairs; occasionally stoop, crouch, crawl, or kneel; and never have exposure to unprotected heights, hazardous work environments, extreme cold, or vibrations, particularly affecting the lower extremities.

A.R. 20.  Relying on the opinion of a vocational expert ("VE") who testified that an individual with such an RFC could perform Plaintiff's past relevant work as an interior designer, the ALJ concluded that Plaintiff was not disabled from March 14, 2013 to December 3, 2013.  A.R. 16-17.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

1.   Did the ALJ err in weighing the medical evidence?

2.   Did the ALJ err in evaluating Plaintiff's credibility?

3.   Is the ALJ's RFC determination supported by substantial evidence?

4.   Did the ALJ err in finding that Plaintiff could perform her past relevant work as an interior designer?

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the

United States District Court
Northern District of California

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.     DISCUSSION

### A.     The ALJ's Weighing of the Medical Opinions

#### 1.     Legal Standard

In the Ninth Circuit, during the relevant time period in this case, courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th

United States District Court
Northern District of California

1  Cir. 1998).  To reject the opinion of an uncontradicted treating physician, an ALJ must provide

2  "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179,

3  184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which

4  conflicted with his own written report and test results).  If another doctor contradicts a treating

5  physician, the ALJ must provide "specific and legitimate reasons" supported by substantial

6  evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  This same standard

7  applies to the rejection of an examining physician's opinion as well.  *Id.* at 830-31.  A non-

8  examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of

9  an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990);

10  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's

11  opinion may be persuasive when supported by other factors.  *See Tonapetyan v. Halter*, 242 F.3d

12  1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may

13  constitute substantial evidence when it is consistent with other independent evidence in the

14  record"); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding rejection of

15  treating physician's opinion given contradictory laboratory test results, reports from examining

16  physicians, and testimony from claimant).

17          Where, as here, a claimant filed an application for Social Security benefits before March

18  27, 2017, "[t]he medical opinion of a claimant's treating doctor is given 'controlling weight' so

19  long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques

20  and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  *Revels*

21  *v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20

22  C.F.R. § 416.927(c)(2) (same).

23                                  **2.       Analysis**

24          Plaintiff contends the ALJ erred in giving the opinions of treating physicians A. Shaba

25  Khan, M.D., Howard E. Denbo, M.D., and Maria Lau, D.O., "little" or "less weight" in favor of

26  the opinions of non-examining, non-treating physicians Steven Golub, M.D., Sergio Bello, M.D.,

27  L.A. Woodard, D.O., and Jeffrey Nugent, M.D.  Mot. 8.

28          Plaintiff appears to agree that the opinions of Drs. Khan, Denbo, and Lau were

United States District Court
Northern District of California

1    contradicted by the opinions of Drs. Golub, Bello, Woodard, and Nugent, all of whom determined

2    that Plaintiff could perform light work with limitations on her ability to stand and/or walk and sit

3    in an eight-hour workday, among other limitations. *See id.* at 9; A.R. 13-15; 50 (Golub's opinion

4    that Plaintiff can sit for 6-7 hours, stand/walk for 6 hours); 116-18 (Bello's opinion that Plaintiff

5    can sit for 6 hours, stand/walk for 4 hours), 86-88 (Woodard's opinion that Plaintiff can sit for 6

6    hours, stand/walk for 4 hours), 583-84 (Nugent's opinion agreeing with Woodard). Accordingly,

7    the ALJ was required to provide "specific and legitimate reasons" supported by substantial

8    evidence to discount the opinions of Drs. Khan, Denbo, and Lau. *See Lester*, 81 F.3d at 830.

9        Although Plaintiff cites the "specific and legitimate reasons" standard, she does not apply

10    it to the ALJ's opinion. *See* Mot. 9. Her argument is brief: she summarizes portions of the

11    assessments of Drs. Khan, Denbo, and Lau and asserts that these opinions "are strongly supported

12    by objective evidence," describing three MRIs and one X-ray of Plaintiff's knees. *Id.* at 9-10.

13    Plaintiff then concludes by arguing that "the ALJ's rejection of" the opinions of Drs. Khan,

14    Denbo, and Lau "was not legitimate" based on their direct examinations of Plaintiff and "close

15    familiarity with her longitudinal treatment history." *Id.* at 10. She does not address the specific

16    rationales offered by the ALJ in discounting these opinions. *See id.* at 8-10. Essentially,

17    Plaintiff's position is that the ALJ should have credited the opinions of her treating physicians

18    over the opinions of non-treating physicians solely based on the treatment relationship alone. This

19    argument is without merit. The ALJ is responsible for resolving conflicts in the medical opinion

20    evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Reddick*, 157 F.3d at 722.

21    A treating relationship alone is not dispositive.

22        Further, even though Plaintiff identifies objective medical evidence that she claims support

23    the opinions of Drs. Khan, Denbo, and Lau, she does not discuss this evidence in any detail. Nor

24    does she address the ALJ's lengthy discussion of the imaging of Plaintiff's knees, *see* A.R. 22, or

25    the ALJ's statement that even though much of the imaging pre-dates the relevant period, he gave

26    Plaintiff "the benefit of the doubt" given "some evidence of progressive bilateral knee

27    degenerative joint disease in considering the associated exam findings dated somewhat prior to the

28    relevant period in conjunction with the claimant's documented subjective complaints of ongoing

1   progressive pain and discomfort" in determining Plaintiff's "modified light residual functional

2   capacity."  A.R. 23.

3          The court is not required to address conclusory, unsupported arguments.  *See Carmickle v.*

4   *Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issue that claimant failed

5   to argue with specificity).[1]  Nonetheless, the court concludes that the ALJ did not err.  As to Dr.

6   Khan, he wrote a March 2013 opinion in which he described 2010 imaging of Plaintiff's knees and

7   lumbar spine and opined that Plaintiff "has a relative permanent degenerative condition in both

8   knees and lumbar spine for which she may need further treatment" and that "it is certain that she

9   will continue to have limitations . . . both with discomfort as well as activity."  A.R. 676.

10  However, the ALJ gave several reasons for assigning the opinion little weight, including that Dr.

11  Khan last saw Plaintiff in August 2011, did not describe any specific functional limitations, and

12  did not describe "correlating abnormal findings on clinical examination, such as neurological or

13  gait abnormalities."  A.R. 25; *see Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018)

14  ("[a]n ALJ does not err by not incorporating a physician's opinion when the physician had not

15  'assign[ed] any specific limitations on the claimant.'" (quoting *Turner v. Comm'r of Soc. Sec.*, 613

16  F.3d 1217, 1223 (9th Cir. 2010)); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding ALJ

17  could reasonably conclude that doctor's descriptions of claimant's ability to work "were

18  inadequate for determining RFC" where the doctor failed to specify claimant's functional limits).

19  Therefore, the ALJ could reasonably conclude these characterizations were inadequate for

20  determining RFC.

21         Plaintiff does not address any of the ALJ's reasons and does not contend that they are not

22  supported by substantial evidence.  The court concludes that the ALJ's treatment of Dr. Khan's

23  opinion was not erroneous.

24         In May 2013, Dr. Denbo wrote that Plaintiff's "main medical problems at present are

25  degenerative osteoarthritis in the knees and lumbar spine, accentuated by advancing age and

26

27  _____

28  [1] Notably, even though the Commissioner argued in her opposition that Plaintiff "fails to
    demonstrate reversible error with any specificity," Opp'n 3, Plaintiff's reply simply repeats the
    same non-specific arguments from her opening brief.  Reply 2-3.

excess weight." A.R. 1086.  He wrote that "[i]n recent years [Plaintiff's] bilateral knee pain has been almost constant, worse on walking and climbing stairs" which "has made her work as an art teacher almost impossible." *Id*.  He opined that "[h]er walking ability has been limited to one-half block at a slow pace" and that "[h]er ability to continue teaching is doubtful." *Id*.  As the ALJ noted, Dr. Denbo cited X-ray imaging evidence and a "remote" 2006 medical workup but "did not mention correlating abnormal findings on physical exam." A.R. 26.  The ALJ also concluded that the "extreme degree of limitations" were "less consistent with and less supportable by the above-discussed largely normal findings," including "little . . . objectively observed difficulties with gait, range or motion, or mobility on physical examination." *Id*.; *see also* A.R. 596 (12/6/2013 exam note documenting normal balance and gait).  Plaintiff does not address these reasons or argue that they are not supported by substantial evidence.  The court finds the ALJ did not err with respect to Dr. Denbo's opinion.

Finally, Dr. Lau wrote in December 2018 that Plaintiff "experiences recurrent problem walking with knees giving out at times, having problem getting out of car, unable to walk for prolonged period of time all of which affects her activities of daily living.  She is unable to sit for prolonged period of time due to sciatica symptoms." A.R. 590.  The ALJ gave several reasons for discounting this opinion, including that it was dated years after the readjudicated period, "does not provide much in the way of specific functional limitations," and was inconsistent with "largely normal findings on physical exam." A.R. 27.  Again, Plaintiff does not address the ALJ's reasons or show that they are not supported by substantial evidence.  The court finds no error with respect to Dr. Lau's opinion.

**B.     The ALJ's Credibility Determination**

**1.   Legal Standard**

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

United States District Court
Northern District of California

1   1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective

2   symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*,

3   464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on

4   general findings, but "must specifically identify what testimony is credible and what evidence

5   undermines the claimant's complaints."  *Id*. at 972 (quotations omitted); *see also Thomas v.*

6   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are

7   "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

8   claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation,"

9   including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also

10  consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek

11  treatment or to follow a prescribed course of treatment."  *Smolen v. Chater*, 80 F.3d 1273, 1284

12  (9th Cir. 1996).

13          The determination of whether or not to accept a claimant's testimony regarding subjective

14  symptoms requires a two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

15  First, the ALJ must determine whether or not there is a medically determinable impairment that

16  reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b),

17  416.929(b); *Smolen*, 80 F.3d at 1281-82.  "At this step, the medical evidence need not corroborate

18  the severity of the alleged symptoms; the medical evidence need only establish that the

19  impairment could reasonably be expected to cause some degree of the alleged symptoms."  *Smith*

20  *v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028,

21  1036 (9th Cir. 2007)).  Once a claimant produces medical evidence of an underlying impairment,

22  the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely

23  on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.

24  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).

25          Then, absent affirmative evidence that the claimant is malingering, the ALJ must provide

26  "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*,

27  572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and

28  convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony.

United States District Court
Northern District of California

*See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see Smith*, 14 F.4th at 1112 (noting that the "specific, clear and convincing" standard "is the most demanding required in Social Security cases" (citation and quotation marks omitted)).  Under this standard, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination."  *Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)).

### 2.    Discussion

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 22.  He did not find that Plaintiff was malingering.  The ALJ then discussed the objective medical evidence, including imaging of Plaintiff's knees and "largely normal" clinical examination findings, as well as Plaintiff's "relatively intact activities of daily living," including her ability "to complete a small staging job" in 2013 "while sitting, reasonably consistent with the capacity to sit for six hours in an eight-hour workday."  *Id*. at 22-24.  He found that "[t]he documented objective medical evidence, including general normal clinical findings, and the claimant's noncompliance with recommended medical treatment are inconsistent with functional limitations to the degree alleged," describing a treating record that indicated that Plaintiff refused treatment because she "wanted disability." A.R. 24.  The ALJ described previous effective treatment with injections as well as the facts that Plaintiff took no pain medications other than Tylenol or Advil during the period at issue and was able to continue working in 2006 while she was experiencing similar symptoms.  *Id*. at 24.

Plaintiff's challenge to the ALJ's credibility finding centers on a single medical record, a July 2013 note.  Mot. 13 (discussing A.R. 579).  For context, the ALJ wrote:

> I note that treating records from July 2013 stated the claimant had significant degenerative joint disease in her knees, and she was recommended for total arthroplasty, which was expected to allow her to return to work, possibly in six months, but the claimant was not interested in nonoperative treatment, did not agree to steroid

> injections, and the orthopedic clinic referred her back to her primary care provider because she was not interested in surgery but wanted disability.

A.R. 24 (citing A.R. 579).  Plaintiff challenges the ALJ's finding by citing a note in the medical record from July 2013:

> Your patient has significant degenerative joint disease in his knees. Unless he is interested in total knee arthroplasty, there is no need to see him.  We would not place him on disability when there is a surgery to offer him.  And, depending on his occupatient [sic], he could likely return to work in six months.  It does not even sound as though your patient is interested in nonoperative treatment, considering he did not agree to the steroid injecitons [sic].  When we see patients with [degenerative joint disease] who are not interested in surgery but who want disability, we refer them back to their PCP.

A.R. 579.  According to Plaintiff, "it is unclear that the note the ALJ refers to [A.R. 579] is even about Ms. Darcey because it consistently refers to the patient as 'he' and 'him.'"  Plaintiff argues that "[g]iven the uncertainty" that the note refers to Plaintiff, the reason the ALJ gave for discounting her testimony about her symptoms "is not convincing, and therefore based on legal error."  Mot. 12.

The court agrees that it is not clear whether the note at A.R. 579 is about Plaintiff. However, the same medical record contains a different note that Plaintiff does not challenge: "64 y/o obese female with knee > back pain . . . Refer to Ortho for disability eval as pt requesting SSI. not sure pain is permanent disability and will defer to Ortho exam of this.  declines knee injections or refer to PT for pain control."  A.R. 579.  This portion of the medical record supports the ALJ's observation that Plaintiff did not follow "recommended medical treatment" and took only Tylenol or Advil for pain.  *See* A.R. 24.  The ALJ's reliance on the ambiguous note in the medical record is the only portion of the ALJ's credibility determination that Plaintiff's motion addresses with any specificity.  *See* Mot. 12.  She does not address any of the other reasons he gave to discount her statements about her symptoms.  Even setting aside the ALJ's statement that Plaintiff "was not interested in surgery but wanted disability," the court finds that the ALJ provided clear and convincing reasons that were supported by evidence to discount Plaintiff's testimony.

### C.     The ALJ's RFC Determination

Plaintiff argues that the ALJ erred in assessing her RFC.  She asserts that the ALJ did not

United States District Court
Northern District of California

reject Dr. Khan's opinion that Plaintiff's bilateral degenerative joint disease was "relatively permanent" and stated that he "give[s] the claimant the benefit of the doubt in light of some evidence of progressive bilateral knee degenerative joint disease." Mot. 14 (citing A.R. 23). However, she argues, the ALJ did not "significantly modify an RFC for light work," because pursuant to the applicable regulation, light work may "require a good deal of walking or standing," and her RFC states that she can stand "for about six hours in an eight-hour workday." *Id.* (quoting 20 C.F.R. § 416.967(b)). Plaintiff's argument appears to be that a limitation to six hours of standing is not consistent with a finding of degenerative joint disease. She does not cite any authority for that proposition.

Additionally, Plaintiff argues that the RFC does not "take into account all of [her] limitations" because it allows standing "for about six hours in an eight-hour workday." *Id.* "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, Plaintiff does not identify any specific limitations that are inconsistent with the assessed RFC. To the extent that this argument relies on limitations assessed by her treating physicians, the court has already found that the ALJ did not err in his treatment of those limitations. The court finds no error with respect to the RFC.

### D.     The Determination that Plaintiff Could Perform Past Relevant Work

Finally, Plaintiff argues that the ALJ's determination that she could perform her past relevant work as an interior designer was in error and not supported by substantial evidence. This argument is based on her previous contention that the ALJ erred with respect to Dr. Denbo's opinion. *See* Mot. 16 ("If Ms. Darcey had been found limited to significantly less than the full range of sedentary work, as per Dr. Denbo's assessment, that would prevent her from doing her past relevant work as an interior designer"). Since the court finds that the ALJ did not err in that respect, it finds no error in his determination that she could perform her past relevant work.

Plaintiff also argues that the ALJ should have credited her statements in a 2013 work history report over her testimony during the May 2021 hearing about the number of hours she spent standing during her interior design job. Mot. 16. In 2013, she described the job as requiring two hours of walking and two hours of standing. *See* A.R. 368. At the May 2021 hearing, she

United States District Court
Northern District of California

testified that she stood one to two hours.  A.R. 60.  Plaintiff argues that if the ALJ had accepted her 2013 estimates and used them in a hypothetical to the VE, "the vocational expert may have testified differently regarding [her] ability to do that job."  Mot. 16.  Setting aside the speculative nature of this argument, the ALJ was entitled to rely upon Plaintiff's 2021 hearing testimony, which was taken under oath, regarding the requirements of her work as an interior designer.  The court finds no error.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is denied.

**IT IS SO ORDERED.**

Dated: February 26, 2024



Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California